JUSTICE NELSON,
dissenting.
¶21 I dissent.
¶22 The Court’s Opinion understates the egregiousness of the facts surrounding Silvestrone’s mistreatment at the hands of the Park County criminal justice system. In his May 23, 2002 Motion to Withdraw Guilty Plea, Silvestrone states as follows. At the time he was charged with partner or family member assault (May 17,2002), he and the alleged victim were involved in a divorce and the victim used *305 the charge in an attempt to obtain leverage in the divorce case. He was immediately incarcerated for three days without the medication prescribed by his physician. He had never been arrested before and had no knowledge of the workings of the criminal justice system. He was emotional and psychologically distraught, and his ability to make appropriate decisions about his situation was compromised. He did not have the opportunity to obtain the advice of legal counsel. He was under the impression that unless he pleaded guilty, he would be returned to custody and would be unable to make bail. Accordingly, on May 20, 2002, without the benefit of counsel, he pleaded guilty to the charge, whereupon he was released.
¶23 On obtaining counsel prior to sentencing, Silvestrone moved to withdraw his guilty plea, but the Justice of the Peace denied his motion. Fortunately, the District Court granted him relief and remanded the case back to Justice Court for a jury trial. However, that very same day, apparently oblivious of the District Court’s order of remand, the Justice of the Peace-“improvidently,” as the County admitted in the District Court-issued a bench warrant for Silvestrone’s arrest.
¶24 There then occurred a series of events that would confound any responsible citizen-and should embarrass the judge and court officers involved. In a quintessential display of the right hand not knowing what the left hand is doing, Silvestrone’s case fell through the cracks. Instead of promptly giving him his day in court as the District Judge had ordered-and as Article II, Section 24 of the Montana Constitution requires-the Justice Court, the prosecutor, and the authorities did nothing for two years. Yet, though lost in the bowels of the court bureaucracy, Silvestrone’s case was not entirely forgotten.
¶25 On December 14,2004, as he was about to board a plane to travel to a job assignment, the authorities arrested Silvestrone and hauled him off to jail. It was only then-after thoroughly trashing his constitutional right to a speedy public trial as ordered by the District Court-that the County filed its motion to dismiss the charge in the “Interests of Justice.” The Justice Court granted the prosecutor’s motion. While that summarily disposed of his case, Silvestrone never got his day in court; never had the opportunity to have a jury of his peers determine his guilt or innocence; never got the chance to face his accuser and to challenge the assault charge, the mere filing of which presumably still besmirches his record; and was deprived of the chance to clear his name. In short, he was never given the opportunity to exercise any of the fundamental constitutional rights that are, in *306 theory, accorded to every person accused of a crime in this State. Indeed, that the charges against him were ultimately dismissed in the “Interests of Justice” is a deception-a facade covering up the gross injustice perpetrated by the Justice Court’s and the prosecutor’s bungled handling of Silvestrone’s case.
¶26 As a result of this debacle, Silvestrone, not surprisingly, sought redress for his mistreatment at the hands of his elected officials and his government. Having received no justice in the criminal justice system, he sued the County in tort for compensation for his ill-treatment. Regrettably, he then hit the brick wall of the civil justice system. The County, the Justice of the Peace, the court officers, the prosecutor-every entity and person involved in this fiasco-was adjudged to be immune from suit. Nobody could be held to account for Silvestrone’s injuries. Indeed, “justice” did not have any interest in Silvestrone’s plight.
¶27 Judicial immunity, quasi-judicial immunity, and prosecutorial immunity are holdovers from the common law. They are, as well, an affront to the notion of individual accountability that is fundamental to our society.
“Accountability of each individual for individual conduct lies at the core of all law-indeed, of all organized societies. The trend to eliminate or modify sovereign immunity is not an unrelated development; we have moved away from ‘The King can do no wrong.’ This principle of individual accountability is fundamental if the structure of an organized society is not to be eroded to anarchy and impotence, and it remains essential in civil as well as criminal justice.”
Nixon v. Fitzgerald, 457 U.S. 731, 768-69, 102 S. Ct. 2690, 2711 (1982) (White, Brennan, Marshall & Blackmun, JJ., dissenting) (quoting Complete Auto Transit, Inc. v. Reis, 451 U.S. 401, 429, 101 S. Ct. 1836, 1851 (1981) (Burger, C.J. & Rehnquist, J., dissenting)).
¶28 Recognizing this fact, the framers of Montana’s Constitution believed that the government, at least, should be liable for the wrongs perpetrated by its servants. See Montana Constitutional Convention, Verbatim Transcript, March 8, 1972, p. 1760. As Delegate Wade J. Dahood, Chairman of the Bill of Rights Committee, explained:
What our committee is really concerned about is making sure that an antiquated doctrine that had no place within American jurisprudence in the first instance is removed from the face of justice in the State of Montana.... We have an opportunity now, as long as in Montana no one else will accept it, to make sure that we *307 have full redress and full justice for all of our citizens.... We submit it’s an inalienable right to have remedy when someone injures you through negligence and through a wrongdoing, regardless of whether he has the status of a governmental servant or not.
Montana Constitutional Convention, Verbatim Transcript, March 8, 1972, pp. 1763-64.
¶29 Placed within the Declaration of Rights, Article II, Section 18 of the Montana Constitution provides:
State subject to suit. The state, counties, cities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.
¶30 Not surprisingly, it did not take the Legislature long to revert to the archaic doctrine that “ ‘the king can do whatever he wants but he doesn’t have to pay for it.’ ” See Massee v. Thompson, 2004 MT 121, ¶ 72, 321 Mont. 210, ¶ 72, 90 P.3d 394, ¶ 72 (Nelson, J., specially concurring and dissenting) (quoting Delegate Marshall Murray, Montana Constitutional Convention, Verbatim Transcript, March 8, 1972, p. 1760). In the years following the adoption of Montana’s 1972 Constitution, the Legislature enacted various statutory roadblocks to frustrate the constitutional right of Montanans to hold the King accountable for his wrongdoing and obtain full legal redress. See generally Title 2, Chapter 9, MCA.
¶31 Section 2-9-112, MCA, which provides blanket immunity from suit to the government and the judiciary for official wrongdoing, is such a statute. While it is tempting to address the constitutionality of this statute head-on, any conclusion in favor of Silvestrone’s constitutional right to sue at least the King, if not the King’s underlings, would be inapposite given the procedural problems underlying this appeal, as set out in the Court’s Opinion. Suffice it to say that reading Article II, Sections 16 and 18 together requires a quid pro quo: If the King’s underlings are statutorily immune from suit, then the abrogation of sovereign immunity, Mont. Const. art II, § 18, the right of access to the courts, Mont. Const. art II, § 16, and the right to a speedy remedy “for every injury of person, property, or character,” i.e., the right to “full legal redress,” Mont. Const. art II, § 16 (emphasis added), together guarantee the right to sue the King himself-any statute to the contrary notwithstanding. I look forward to the case in which an *308 appropriate constitutional challenge is raised and this argument is developed.
¶32 As for the case at bar, our civil justice system has refused to provide an opportunity for full legal redress to a citizen whose rights have been flagrantly trampled on and to hold those responsible for that abuse accountable. I must therefore dissent from the Court’s decision-in the “Interests of Justice.”